**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| CARLOS A. MEJIA-GOMEZ, | Civil No. 05-5000 (JBS) |
| Petitioner, |  |
| v. | **O P I N I O N** |
| DHS/ICE, |  |
| Respondent. |  |

**APPEARANCES:**

    CARLOS A. MEJIA-GOMEZ, pro se
    #68637-053
    F.C.I. FORT DIX
    FORT DIX, NJ 08640

**JEROME B. SIMANDLE**, District Judge

    Petitioner CARLOS A. MEJIA-GOMEZ (hereinafter "Petitioner"), a federally sentenced inmate confined at the Federal Correctional Institution at Fort Dix, seeks to file in forma pauperis his 28 U.S.C. § 1361 Petition (hereinafter "Petition") seeking a writ of mandamus directing the Immigration and Customs Enforcement (hereinafter "ICE") to issue Petitioner a Certification of Status. The Court grants the application to proceed in forma pauperis and, for the reasons set forth below, summarily dismisses the Petition.

**BACKGROUND**

Petitioner, a native of Columbia, asserts that he is confined at FCI Fort Dix pursuant to a criminal sentence entered in the United States District Court for the Eastern District of New York based on conspiracy to distribute and possess with intent to distribute a controlled substance. See Pet. at 1, 5. Although no detainer was lodged against Petitioner and no certification of Petitioner's status as a deportable or as a non-deportable alien was issued by the ICE, the Bureau of Prisons (hereinafter "BOP") gave Petitioner "Alien" Public Safety Factor Classification. See id. at 2. Petitioner alleges that: (1) as a result of not having his status certified,[1] Petitioner is unable to "proceed on his political refuge claim with the Canadian Government";[2] and (2) as a result of having "Alien" Public Safety Factor Classification, Petitioner is denied programming offered to other inmates at FCI Fort Dix. Id. Petitioner (1) expressly requests a writ of mandamus directing the ICE to issue Petitioner his certification of

---

[1] Attached to the Petition is a "Request for Notice of Certification for Non-Deportable Alien" dated July 12, 2005, addressed to the ICE's Field Office Director in Newark. Petitioner asserts that, after not receiving a reply for forty days-Petitioner sent the ICE his Final Notice on August 22, 2005. See Pet. at 3. After not receiving a response to his Final Notice for fifty days, Petitioner filed his Petition with this Court. See id.

[2] Although Petitioner has not been yet classified as a deportable alien, it appears that Petitioner nonetheless challenges his deportability by asserting that his felony drug conviction is not an "aggravated felony," because it is not a crime of violence as defined by the United States Supreme Court in Leocal v. Ashcroft, 543 U.S. 1 (2004). See Pet. at 2.

2

status; and (2) ambiguously requests removal of his "Alien" classification.  See id. at 2-5.

## DISCUSSION

**A.   Writ of Mandamus**

Pursuant to 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  Mandamus is an extraordinary remedy to be utilized only in the clearest and most compelling cases.  See Heckler v. Ringer, 466 U.S. 602, 616 (1984). The exercise of the power of mandamus is a matter committed to the sound discretion of the court, Whitehouse v. Illinois Cent. R. Co., 349 U.S. 366 (1955), and the remedy is to be restricted to exigent circumstances.

In addition, certain conditions must be met before mandamus relief is granted.  "Among these are that the party seeking issuance of the writ have no other adequate means to attain the relief he desires, and that he satisfy 'the burden of showing that (his) right to issuance of the writ is clear and indisputable.'" Kerr v. United States District Court, 426 U.S. 394, 403 (1976) (citations omitted).  Thus, mandamus is available to Petitioner only if he shows that (1) he has a clear right to the relief sought, (2) Respondent has a clear duty to perform, and (3) no other adequate remedy is available.  See Brow v. United States

3

Dist. Court, 121 Fed. Appx. 443, 444 (3d Cir. 2005). Indeed, the critical consideration in determining the propriety of resort to a writ of mandamus is the question of alternative remedies; the writ is usually denied when such alternatives exist.³  See Ex Parte Republic of Peru, 318 U.S. 578 (1943). Moreover, the alternative remedies that might call for refusal to resort to writ of mandamus encompass judicial remedies, Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969), cert. denied, 397 U.S. 941 (1970), as well as administrative ones.  See Tarlton v. Clark, 441 F.2d 384 (5th Cir.), cert. denied, 403 U.S. 934 (1971).

---

³
    One court summarized the basic principles governing the availability of the writ of mandamus as follows:

> (1) The writ should be used only when the duty of the officer to act is clearly established and plainly defined and the obligation to act is peremptory. (2) The presumption of validity attends official action, and the burden of proof to the contrary is upon one who challenges the action. (3) Courts have no general supervisory powers over the executive branches or over their officers, which may be invoked by writ of mandamus. Interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief. (4) When the performance of official duty requires an interpretation of the law which governs that performance, the interpretation placed by the officer upon the law will not be interfered with, certainly, unless it is clearly wrong and the official action arbitrary and capricious. (5) For it is only in clear cases of illegality of action that courts will intervene to displace the judgments of administrative officers or bodies. (6) Generally speaking, when an administrative remedy is available it must first be exhausted before judicial relief can be obtained, by writ of mandamus or otherwise.

Hammond v. Hull, 131 F.2d 23, 25 (App. D.C. 1942), cert. denied, 318 U.S. 777 (1943) (citations omitted).

In the case at bar, and as detailed below, Petitioner has no right to relief sought, Respondents[4] have no duty to perform, and numerous alternative remedies are available to Petitioner. While this Court appreciates Petitioner's eagerness to explore the possibility of and/or the need for political refuge in Canada, the mandate of 28 U.S.C. § 1361 was not created as a vehicle to jump-start an inmate' inquiries when it appears certain that, in due course of events, the inmate's application will be addressed, and he will be availed to sufficient administrative and/or judicial remedies.

**B.   Petitioner Has No Claim Against the ICE**

Petitioner seeks an order directing the ICE to, effectively, determine whether or not Petitioner should be removed and, if the answer is yes, to initiate removal proceedings against Petitioner. While, in the case of an alien who is convicted of an offense that makes the alien removable, the Immigration and Nationality Act requires the Attorney General to begin removal proceedings as expeditiously as possible after the date of the conviction, see 8 U.S.C. § 1229(d)(1), the very same statute expressly states that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally

---

[4] It appears that Petitioner indirectly implicates the BOP as a Respondent, since Petitioner complains about the BOP's classification of Petitioner as "alien." See Pet. at 2-5.

enforceable by any party against the United States or its agencies or officers or any other person."  8 U.S.C. § 1229(d)(2).

Thus, a prisoner cannot compel the ICE, by way of habeas corpus, mandamus or the Administrative Procedure Act, to initiate a removal proceeding.  See Channer v. Hall, 112 F.3d 214 (5th Cir. 1997) (alien has no private of right of action to enforce 8 U.S.C. § 1252(h), the predecessor of § 1229(d)(1)); Thye v. United States, 109 F.3d 127 (2d Cir. 1997) (predecessor of § 1229(d)(1) does not create a private right of action to compel Attorney General to remove him prior to completion of sentence); Campos v. Immigration and Naturalization Service, 62 F.3d 311 (9th Cir. 1995) (although INS filed detainer, federal prisoner lacks standing to seek mandamus or habeas relief to compel INS to hold an immediate deportation hearing pursuant to predecessor of § 1229(d)); Hernandez-Avalos v. Immigration and Naturalization Service, 50 F.3d 842 (10th Cir. 1995) (despite INS detainer, federal prisoner has no private right of action to compel INS to initiate removal proceeding); Giddings v. Chandler, 979 F.2d 1104 (5th Cir. 1992) (same).  Whether the application is fashioned as a habeas action or a petition for mandamus under Section 1361, any prisoner's claim petitioning the ICE for a removal-related action prior to the completion of the prisoner's custodial sentence is unripe and subject to dismissal.  See Perez v. Immigration & Naturalization Service, 979 F.2d 299, 301 (3d Cir. 1992)(citing Medina v. United

States, 785 F. Supp. 512 (E.D.Pa. 1992)); Severino v. Thornburgh, 778 F. Supp. 5, 7 (S.D.N.Y. 1991); Paulino v. Connery, 766 F. Supp. 209, 211-12 (S.D.N.Y. 1991)).

**C.   Petitioner Has No Claim Against the BOP**

While Petitioner appears to object to his "Alien" Public Safety Factor classification by the BOP, Petitioner does not suggest that he is not an alien; and his felony drug conviction appears to be an "aggravated felony," subjecting him to removal, without regard to whether it is a crime of violence.

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The Immigration and Nationality Act defines an "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."  8 U.S.C. § 1101(a)(43)(B).  A drug trafficking crime, according to section 924(c) of Title 18, is defined to include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)." Petitioner's conviction for possession with intent to distribute controlled substance, in violation of 21 U.S.C. § 841, meets this definition of "aggravated felony."

Nor does the incidental effect of the "Alien" Public Safety Factor classification on his eligibility for program participation

7

violate any constitutional right to due process or equal protection.

    A.  Due Process Claim

    A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or enacted law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).

    It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

    Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these

8

interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). Petitioner does not allege either that some statute confers a liberty interest in being free from the constraints imposed against prisoners having "Alien" Public Safety Factor classification or that the conditions under which he is confined present "atypical and significant hardships." Thus, Petitioner cannot establish any deprivation of his liberty interests under the Due Process Clause.

    B.   Equal Protection Claim

In addition, the exclusion of persons subject to the BOP's "Alien" classification from certain programs does not violate the Equal Protection Clause. Regulations such as those challenged here classify prisoners as (1) those who are subject to custodial considerations (including those who have classifications or detainers lodged against them) and (2) those who are not, not on the basis of alienage. See McLean v. Crabtree, 173 F.3d 1176,

9

1185-86 (9th Cir. 1999), cert. denied, 528 U.S. 1086 (2000). Since "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest," see Nordlinger v. Hahn, 505 U.S. 1, 10 (1992), exclusion of prisoners subject to classifications or detainers or other custodial considerations from participation in programs involving custody issues is rationally related to the BOP's legitimate interest in preventing such prisoners from fleeing. See McLean v. Crabtree, 173 F.3d at 1185-86. Accordingly, the "Alien" classification, and the program limits it triggers, does not violate the Equal Protection Clause.

## CONCLUSION

Since Petitioner failed to show either that he has a clear right to the relief sought, or that the Respondents have a clear duty to perform, or that no other adequate remedy is available, Petitioner's application for a writ of mandamus is denied.


March 31, 2006                         **s/ Jerome B. Simandle**
                                       Jerome B. Simandle
                                       United States District Judge